# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
### ALBANY DIVISION

|  |  |  |
|---|---|---|
| TODD DEARISO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: |
| v. | ) | |
| | ) | |
| DOUGHERTY COUNTY SCHOOL SYSTEM; KENNETH DYER, in his individual capacity; RODNEY BULLARD, in his individual capacity; and UFOT INYANG, in his individual capacity; | ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## PRELIMINARY STATEMENT AND INTRODUCTION

1.     Plaintiff Dr. Todd Deariso ("Dr. Deariso") is the former Principal of the Lincoln Elementary Magnet School ("LEMS") in the Dougherty County School System ("DCSS").

2.     Despite Dr. Deariso's commitment to DCSS, Superintendent Kenneth ("Ken") Dyer, Assistant Superintendent Rodney Bullard, and Associate Superintendent for Academic Services Ufot Inyang continuously subjected Dr. Deariso to unwarranted heightened scrutiny, created a racially discriminatory

working environment, refused to renew his contract, and subsequently refused to rehire him based on his race.

3.     On May 15, 2018, Mr. Dyer informed Dr. Deariso that DCSS was not renewing his contract.

4.     DCSS's decision to not renew Dr. Deariso's employment contract was an unlawful act of discrimination that it took against Dr. Deariso because of his race.

5.     Thereafter, notwithstanding repeated applications for a number of positions, DCSS, as well as Mr. Ken Dyer, Mr. Rodney Bullard, and Dr. Ufot Inyang, in their individual capacities (collectively the "Individual Defendants") refused to rehire Dr. Deariso because of his race.

6.     Dr. Deariso files this Complaint for declaratory, injunctive, and monetary relief against the Individual Defendants for race discrimination in violation of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983 and 42 U.S.C. § 1981; and against Defendant Dougherty County School System for race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

7.     Dr. Deariso seeks back pay and the lost economic benefits of his employment, reinstatement or front pay in lieu of reinstatement, compensatory

damages, punitive damages against the Individual Defendants, reasonable attorney's fees and costs of litigation, and all other relief this Court may deem just.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.     Dr. Deariso has satisfied all administrative prerequisites to perfect his claim of discrimination under Title VII. Specifically, he timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 8, 2018.

9.     Dr. Deariso received the Notice of Right to Sue for his Title VII claims on August 21, 2020, within the last ninety days.

## JURISDICTION AND VENUE

10.     Dr. Deariso's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

11.     The violations of Dr. Deariso's rights occurred in the Middle District of Georgia. Venue is proper under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Albany Division of the United States District Court for the Middle District of Georgia.

## PARTIES

12.     Todd Deariso is a citizen of the United States and an adult resident of the State of Georgia. Dr. Deariso resides in Sylvester, Worth County. He was

employed by the Dougherty County School District from approximately July 1, 2013 to June 5, 2018.

13.    The Dougherty County School System is a charter school system that runs eleven preschools, fourteen elementary schools, five middle schools, and four high schools and serves about 15,000 students. Defendant DCSS's headquarters is located at 200 Pine Avenue, in Albany, Dougherty County, Georgia. Defendant DCSS is an employer subject to suit under Title VII; it has fifteen or more employees and is engaged in interstate commerce.

14.    Defendant Ken Dyer ("Defendant Dyer") is the Superintendent of DCSS, who served in this capacity at all times relevant to the allegations contained herein. Defendant Dyer is a resident of Lee County, residing at 122 Silver Leaf Drive, Albany, Georgia 31721. He is being sued pursuant to 42 U.S.C. § 1983 in his individual capacity.

15.    Defendant Rodney Bullard ("Defendant Bullard") is the Assistant Superintendent of DCSS, who served in this capacity at all times relevant to the allegations contained herein. Defendant Bullard is a resident of Dougherty County, residing at 5002 Barrington Drive, Albany, Georgia 31721. He is being sued pursuant to 42 U.S.C. § 1983 in his individual capacity.

16.    Defendant Ufot Inyang ("Defendant Inyang") is now retired; however, at all times relevant to the allegations contained herein, Defendant Inyang was the

Associate Superintendent for Academic Services. Defendant Inyang is a resident of Dougherty County, residing at 2217 Greenoch Avenue #1, Albany, Georgia 31721. He is being sued pursuant to 42 U.S.C. § 1983 in his individual capacity.

**FACTUAL ALLEGATIONS**

**Before His Unlawful Contract Non-renewal, Dr. Deariso Was a Long-Term, High Performing Educator**

17.     Dr. Deariso has extensive credentials and experience spanning more than two decades as an educator and administrator.

18.     Dr. Deariso served as Principal of Lincoln Elementary Magnet School from 2016 to 2018, where he implemented a science lab and helped the school receive LEXIA Awards and I-Ready Reading and Math High Usage Awards for the county.

19.     Prior to that, Dr. Deariso worked in school administrative roles within DCSS for three years. Dr. Deariso served as the Northside Elementary School Principal from 2013 to 2016. During this time, Dr. Deariso implemented LEXIA, I-Ready, and PBIS and improved test scores. From 2012 to 2013, Dr. Deariso was the Assistant Principal at Robert Cross Middle Magnet School, serving as the testing coordinator and the 504 coordinator.

20.     Before working for DCSS, Dr. Deariso worked for the Worth County School District for over two decades, first as a fourth-grade teacher and Assistant Principal at Holley Elementary School, then as the Assistant Principal and

Principal of Sylvester Elementary School, and finally, as the Principal of Worth County Elementary School.

### Dr. Deariso's Employment Related Problems Began When Defendant Dyer and Defendant Bullard Assumed Their Current Roles With DCSS

21.    While Dr. Deariso was employed with the Worth County School District, Defendant DCSS's then-Superintendent, Dr. David C. "Butch" Mosely, and then-Assistant Superintendent, Dr. Jack Willis, approached Dr. Deariso to begin working for DCSS. Dr. Deariso accepted their offer and started employment with DCSS in 2013.

22.    From 2013 until Dr. Mosely and Dr. Willis's retirements in 2017, while working for Defendant DCSS, Dr. Deariso did not experience racial discrimination.

23.    From 2013 until Dr. Mosely and Dr. Willis's retirements in 2017, Dr. Deariso had a good working relationship with Defendant Inyang.

24.    In 2017, Defendant Dyer replaced Dr. Mosley as DCSS Superintendent and Defendant Bullard replaced Dr. Willis as DCSS Assistant Superintendent.

25.    After Defendants Dyer and Bullard assumed their roles, Dr. Deariso began experiencing concerns that his race presented a problem for the now majority African American school system management.

26.     DCSS's Superintendent Ken Dyer, the Associate Superintendent for Academic Services, Ufot Inyang, and the Deputy Superintendent, Rodney Bullard, are all African American.

### Defendants Targeted Dr. Deariso and Treated Him Differently than His African American Colleagues

27.     Dr. Deariso's concerns that his race was an issue with Defendant Dyer developed in part after a meeting at the beginning of the 2017–2018 school year when Defendant Dyer accused Dr. Deariso of being intoxicated at the meeting.

28.     Dr. Deariso was not intoxicated at the school meeting. When he tried to explain to Defendant Dyer that he was not intoxicated, Defendant Dyer responded that he seemed to be acting out of character that night by being louder and more boisterous than usual. Dr. Deariso told Defendant Dyer that the person sitting next to him at the time was the one who was being loud and boisterous. Dr. Deariso then asked Defendant Dyer why he had not followed school protocol and taken him to get a blood alcohol test if he thought he was intoxicated.

29.     Following this incident, Dr. Deariso noticed that Defendant Dyer ignored him unless Dr. Deariso initiated the contact. Dr. Deariso also observed that Defendant Dyer often ignored his Caucasian colleagues. Many of Dr. Deariso's Caucasian colleagues, who also noticed Defendant Dyer's conduct, often talked about how they were ignored. However, Defendant Dyer was very sociable with

Dr. Deariso's African American colleagues—especially those who were members of his historically African American fraternity.

30.    At the beginning of the 2017–2018 school year, Assistant Principal Gina Scott left LEMS. Dr. Deariso considered interviewing a Caucasian female for the Assistant Principal position. However, instead of letting Dr. Deariso open the Assistant Principal position and interview applicants—which is generally the standard procedure when an Assistant Principal position is open—Defendant Dyer told Dr. Deariso that he had already selected Dr. Shawn Davidson, an African American male, for the position. Defendant Dyer told Dr. Deariso that he wanted to help Dr. Davidson, who at the time was a professor at Albany State University and previously taught Defendant Dyer, get a position with DCSS.

31.    Before Defendants Dyer and Bullard assumed their roles as Superintendent and Assistant Superintendent, respectively, Defendant Inyang gave Dr. Deariso good evaluations and reviews. Then, at the start of the 2017–2018 school year, Defendant Inyang began scrutinizing Dr. Deariso more than he had in previous years. First, Defendant Inyang sent out a School Climate Survey to LEMS staff. Though Defendant Inyang promised to discuss the survey results with him, Dr. Deariso never received feedback from the surveys. Moreover, Defendant Inyang focused his critiques almost entirely on the concerns of the parents of two

or three students, even though LEMS had about 870 children attending the school at the time.

32.    At a pre-evaluation conference on or about September 8, 2018, Defendant Inyang told Dr. Deariso that the county administration had discussed moving Dr. Deariso around Christmas Break during a meeting. Defendant Inyang also told Dr. Deariso that he was "on a tight leash." Throughout their conversation, whenever Dr. Deariso mentioned areas of growth in the Georgia Milestones data, Defendant Inyang responded by redirecting the conversation to focus entirely on the weaker areas. Defendant Inyang further informed Dr. Deariso that they assigned Dr. Sheryl Holmes (a retired Principal) to be the interim Assistant Principal, to be his mentor and offer him guidance. Defendant Inyang then claimed that Dr. Holmes told him that Dr. Deariso did not take responsibility for anything. This was a false accusation.

33.    After the pre-evaluation conference, Dr. Deariso approached Dr. Holmes about his conversation with Defendant Inyang. Dr. Holmes claimed she did not say anything about Dr. Deariso to Defendant Inyang or anyone else. On or about September 13, 2018, Dr. Holmes told Dr. Deariso that she spoke to Defendant Dyer about what Defendant Inyang told Dr. Deariso during the pre-evaluation conference.

34.     Soon after Dr. Holmes's conversation with Defendant Dyer, Defendant Inyang sent Dr. Deariso an email about putting him on a Professional Learning Plan ("PLP"). Dr. Deariso contested the PLP and requested that Defendant Inyang cite examples to demonstrate why a PLP was necessary. Defendant Inyang was unable to concretely explain why the PLP was necessary. Instead, Defendant Inyang responded with hostility.

35.     During another conversation with Dr. Deariso, Defendant Inyang yelled, "Shut your mouth and listen to me," at Dr. Deariso. Defendant Inyang then stated, "You don't understand the type of pressure I have with the new Superintendent."

36.     During another meeting that occurred at the beginning of the 2017–2018 school year, Defendant Dyer, Defendant Bullard, and Defendant Inyang criticized Dr. Deariso for hiring too many white teachers. However, seven of the nine teachers Dr. Deariso hired were African American. When Dr. Deariso told them how many African American teachers he had hired, the Defendants said the "perception" was that he hired too many white employees. The Defendants did not explain whose perception they were referencing when Dr. Deariso asked them.

**Defendants Fostered a Discriminatory Working Environment that Spread Throughout the School District**

37.     At a school district meeting during the beginning of the 2017–2018 school year, with majority African American employees in attendance, a DCSS

employee made a joke about a historically African American fraternity matter. While the others laughed at the joke, Dr. Deariso smiled politely. The presenter, a contractor hired to revamp the DCSS reading program, looked at Dr. Deariso and said, "Don't worry, brother. You wouldn't get it," prompting Dr. Deariso's non-white colleagues to laugh.

38.   Dr. Holmes told Dr. Deariso about a white second-grade teacher, "This woman does not need to be teaching black children because she can't relate to them," and that the "students need someone to look up to."

39.   When the Assistant Principal position was open, Dr. Holmes also told Dr. Deariso that he needed to hire an African American Assistant Principal.

40.   Dr. Deariso reported these uncomfortable racial conversations to Defendant DCSS's Head of HR, Jill Addison, on several occasions. However, racial discrimination continued.

**Defendants Did Not Renew Dr. Deariso's Employment Contract Because of His Race**

41.   In April 2018, Defendant Dyer told Dr. Deariso that he would no longer be the LEMS Principal. Defendant Dyer claimed that he wanted to change the leadership at LEMS and take the school in a new direction. However, Dr. Deariso was the only person from LEMS's administration who was removed.

42.   During the meeting, Defendant Dyer also told Dr. Deariso that DCSS would find him a job that best matched his skill set. When Dr. Deariso asked

11

Defendant Dyer whether DCSS was not going to renew his employment contract, Defendant Dyer responded in the negative. Based on his conversation with Defendant Dyer, Dr. Deariso was under the impression that he would have a position as a school improvement coach at the DCSS Isabella Complex. However, on May 15, 2018, Defendant Dyer informed Dr. Deariso that his contract with DCSS would not be renewed effective June 5, 2018.

43.     By contrast, four African American Principals who were removed from Principal positions—two of whom Dr. Deariso knew were previously placed on performance plans—had their employment contracts renewed and had positions as school improvement coaches at the DCSS Isabella Complex.

44.     DCSS told the Georgia Department of Labor that Dr. Deariso was non-renewed because his position was eliminated. However, DCSS replaced Dr. Deariso with an African American Principal, Dr. Davidson—the same person who Defendant Dyer placed in the Assistant Principal role at the beginning of the school year. Dr. Davidson is less qualified than Dr. Deariso and has less experience in school administration.

**Defendants Refused to Rehire Dr. Deariso**

45.     Following the non-renewal of his contract, Dr. Deariso applied for employment into twenty-seven positions with DCSS. He was hired into none of them, notwithstanding his significant qualifications for the positions.

46.    On May 24, 2018, at around 11:30 am, Dr. Deariso met with Northside Elementary School's Principal, Katina Allen, to discuss a fifth-grade science teacher position for the next school year. During the meeting, Ms. Allen offered Dr. Deariso the position, and a Personnel Action Form (PAF) was completed. However, on the same afternoon, Ms. Allen called Dr. Deariso and explained that she could not go forward with the PAF for the fifth-grade position because "downtown" would not allow it.

47.    Ultimately, the Defendants' conduct has damaged Dr. Deariso's standing in the local community and the larger community of educators.

### The Alleged Non-Discriminatory Reasons for Termination are Merely Pretextual

48.    When Dr. Deariso's contract was not renewed, no legitimate reason was given.

49.    During the EEOC process, Defendants finally offered alleged reasons why Defendant DCSS did not renew Dr. Deariso's contract; however, those reasons are merely pretextual, and Dr. Deariso's contract was not renewed because of his race.

## CAUSES OF ACTION

### COUNT ONE
### Race Discrimination in Violation of Title VII, 42 U.S.C. § 2000e *et seq.*
### *Against Defendant DCSS*

50.     All preceding paragraphs are hereby incorporated as though each of the factual allegations is restated.

51.     Dr. Deariso is in a protected class based on his race (white).

52.     At all relevant times, Dr. Deariso was an "employee" of Defendant DCSS as that term is defined by Title VII, 42 U.S.C. § 2000e *et seq.* or, subsequently sought to be an employee.

53.     At all relevant times, Defendant DCSS was an "employer" as that term is defined by Title VII, 42 U.S.C. § 2000e *et seq*.

54.     Defendant DCSS subjected Dr. Deariso to adverse employment action on the basis of his race when it terminated his employment by not renewing his contract.

55.     Defendant DCSS subjected Dr. Deariso to adverse employment action on the basis of his race when it refused to rehire him into positions for which he was qualified.

56.     Dr. Deariso had successfully performed his job duties at the time he was employed and he was qualified for the position of Principal and subsequently for the positions for which he applied.

57.    Defendant DCSS lacks any legitimate justification for terminating Dr. Deariso and any purported justifications are pretexts for race discrimination.

58.    Defendant DCSS lacks any legitimate justification for refusing to hire Dr. Deariso and any purported justifications are pretexts for race discrimination.

59.    Defendant DCSS's above-pled actions constitute race discrimination in violation of Title VII of the Civil Rights Act of 1964.

60.    Dr. Deariso's race was a motivating factor in Defendant DCSS's decision to take the above-pled discriminatory actions, even if his race was not the only factor that motivated that decision.

61.    Defendant DCSS's actions in subjecting Dr. Deariso to unlawful termination were willful, deliberate, and intended to cause Dr. Deariso harm, and/ or were committed with reckless disregard for the harm caused to Dr. Deariso and were in derogation of his federally protected rights.

62.     Defendant DCSS's actions in refusing to rehire Dr. Deariso were willful, deliberate, and intended to cause Dr. Deariso harm, and/ or were committed with reckless disregard for the harm caused to Dr. Deariso and were in derogation of his federally protected rights.

63.    As a direct and proximate result of Defendant DCSS's violations of Title VII, Dr. Deariso has suffered damages, including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

64.     As a result of the above-pled violations of Title VII, Dr. Deariso is entitled to recover lost wages and economic benefits of his employment, compensatory damages for emotional distress, and punitive damages, as well as front pay and other equitable relief, and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

**COUNT TWO**
**42 U.S.C. § 1983—Denial of Equal Protection of the Laws on the Basis of Race in Violation of the Fourteenth Amendment to the United States Constitution**
***Against the Individual Defendants***

65.     All preceding paragraphs are hereby incorporated as though each of the factual allegations is restated.

66.     As a white, United States citizen, Plaintiff is a member of a class of persons entitled under the Fourteenth Amendment to the U.S. Constitution to equal protection of the laws, including those laws that prohibit discrimination because of race.

67.     By virtue of their actions, Defendants deprived Plaintiff of his right to equal protection of the laws as secured by the Fourteenth Amendment to the U.S. Constitution and protected by 42 U.S.C. § 1983.

68.     At all times relevant to this Complaint, Plaintiff was an employee of a public institution or applying for positions at a public institution.

69.     Defendant Dyer, acting under the color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in

employment by directly participating in Defendant DCSS's discriminatory actions to subject Dr. Deariso to disparate treatment in a manner that adversely affected the terms and conditions of his employment, and prevented him from being rehired.

70.     Defendant Dyer, acting under color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment, because he, as the DCSS Superintendent, was in a position of authority to take responsive action to stop the violations of Dr. Deariso's constitutional rights as described herein, and he knew about the violations of Dr. Deariso's rights, yet he failed to act, thereby acquiescing in the discriminatory conduct and causing the discrimination against Dr. Deariso to persist and worsen. Defendant Dyer's failure to act in the face of known violations of Dr. Deariso's constitutional rights amounted to deliberate indifference.

71.     Defendant Dyer, acting under color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment by subjecting him to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included subjecting Dr. Deariso to discriminatory and harassing investigations; and subjecting Dr. Deariso to overt hostility.

72.     Defendant Dyer, acting under color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment by terminating his employment because of race, and refusing to rehire him or allowing DCSS to refuse to rehire him because of race.

73.     As a direct result of the actions, statements and/or policies of Defendant Dyer, Dr. Deariso has suffered an unconstitutional deprivation of his rights under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution.

74.     Defendant Dyer acted intentionally and with callous disregard for Dr. Deariso's known statutory and constitutional rights.

75.     Defendant Bullard's conduct described above has directly and proximately caused, and continues to cause, Dr. Deariso to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to his professional reputation.

76.     Defendant Bullard, acting under the color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment by directly participating in Defendant DCSS's discriminatory actions to subject Dr. Deariso to disparate treatment in a manner that adversely affected

the terms and conditions of his employment and subsequent applications for employment.

77. Defendant Bullard, acting under color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment, because he, as the DCSS Assistant Superintendent, was in a position of authority to take responsive action to stop the violations of Dr. Deariso's constitutional rights as described herein, and he knew about the violations of Dr. Deariso's rights, yet he failed to act, thereby acquiescing in the discriminatory conduct and causing the discrimination against Dr. Deariso to persist and worsen. Defendant Bullard's failure to act in the face of known violations of Dr. Deariso's constitutional rights amounted to deliberate indifference.

78. Defendant Bullard, acting under color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment by subjecting him to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included subjecting Dr. Deariso to discriminatory and harassing investigations; and subjecting Dr. Deariso to overt hostility.

79. Defendant Bullard, acting under color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment by terminating his employment because of race.

80. Defendant Bullard, acting under color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment by refusing to rehire him because of race.

81. As a direct result of the actions, statements and/or policies of Defendant Bullard, Dr. Deariso has suffered an unconstitutional deprivation of his rights under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution.

82. Defendant Bullard acted intentionally and with callous disregard for Dr. Deariso's known statutory and constitutional rights.

83. Defendant Bullard's conduct described above has directly and proximately caused, and continues to cause, Dr. Deariso to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to his professional reputation.

84. Defendant Inyang, acting under the color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment by directly participating in Defendant DCSS's discriminatory actions to subject Dr. Deariso to disparate treatment in a manner that adversely affected the terms and conditions of his employment and subsequent application for employment.

85.     Defendant Inyang, acting under color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment, because he, as DDCS Associate Superintendent for Academic Service, was in a position of authority to take responsive action to stop the violations of Dr. Deariso's constitutional rights as described herein, and he knew about the violations of Dr. Deariso's rights, yet he failed to act, thereby acquiescing in the discriminatory conduct and causing the discrimination against Dr. Deariso to persist and worsen. Defendant Inyang's failure to act in the face of known violations of Dr. Deariso's constitutional rights amounted to deliberate indifference.

86.     Defendant Inyang, acting under color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment by subjecting him to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included subjecting Dr. Deariso to discriminatory and harassing investigations; and subjecting Dr. Deariso to overt hostility.

87.     Defendant Inyang, acting under color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment by terminating his employment because of race and refusing to rehire him because of his race.

88.    As a direct result of the actions, statements and/or policies of Defendant Inyang, Dr. Deariso has suffered an unconstitutional deprivation of his rights under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution.

89.    Defendant Inyang acted intentionally and with callous disregard for Dr. Deariso's known statutory and constitutional rights.

90.    Defendant Inyang's conduct described above has directly and proximately caused, and continues to cause, Dr. Deariso to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to his professional reputation.

91.    Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the below prayer for relief for Defendants' violation of his rights under the Fourteenth Amendment to the U.S. Constitution, which rights are protected from infringement by state actors through the Civil Rights Act of 1871, 42 U.S.C. § 1983.

**COUNT THREE**
**42 U.S.C. § 1981—Race Discrimination**
**(Asserted via 42 U.S.C. § 1983)**
***Against the Individual Defendants***

92.    All preceding paragraphs are hereby incorporated as though each of the factual allegations is restated.

93.     At all times material to this Complaint, Plaintiff and Defendants were parties to an employment agreement under which Plaintiff worked for Defendants and Defendants compensated Plaintiff for his work.

94.     Plaintiff performed his obligations under his employment agreement.

95.     42 U.S.C. § 1981 prohibits Defendants from discriminating against Plaintiff on the basis of race with regard to the making and enforcing of his employment agreements with Defendants.

96.     The above-pled discriminatory conduct toward Plaintiff, including, but not limited to, Defendants' discriminatory discharge based on race and failure to hire based on race constitute unlawful race discrimination against Plaintiff in the terms and conditions of his employment in violation of 42 U.S.C. § 1981.

97.     Defendants violated Plaintiff's rights under 42 U.S.C. § 1981 by terminating his employment because of his race and refusing to rehire him based on race.

98.     Defendant Dyer, acting under the color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment by directly participating in Defendant DCSS's discriminatory actions to subject Dr. Deariso to disparate treatment in a manner that adversely affected the terms and conditions of his employment and rehire.

99.    Defendant Dyer, acting under color of state law, violated Dr. Deariso's right to be free from race discrimination in employment, because he, as DCSS Superintendent, was in a position of authority to take responsive action to stop the violations of Dr. Deariso's right as described herein, and he knew about the violations of Dr. Deariso's rights, yet he failed to act, thereby acquiescing in the discriminatory conduct and causing the discrimination against Dr. Deariso to persist and worsen. Defendant Dyer's failure to act in the face of known violations of Dr. Deariso's rights amounted to deliberate indifference.

100.    Defendant Dyer, acting under color of state law, violated Dr. Deariso's right to be free from race discrimination in employment by subjecting him to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included subjecting Dr. Deariso to discriminatory and harassing investigations; and subjecting Dr. Deariso to overt hostility because of his race.

101.    Defendant Dyer, acting under color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment by terminating his employment because of race and refusing to rehire him because of his race.

102.    Defendant Dyer, acting in his individual capacity, undertook his conduct intentionally and maliciously with respect to Plaintiff and his federally

protected rights, or additionally, and in the alternative, undertook his conduct recklessly with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against Defendant Dyer.

103.   Defendant Dyer's conduct described above has directly and proximately caused, and continues to cause, Dr. Deariso to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to his professional reputation.

104.   Defendant Bullard, acting under the color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment by directly participating in Defendant DCSS's discriminatory actions to subject Dr. Deariso to disparate treatment in a manner that adversely affected the terms and conditions of his employment and rehire.

105.   Defendant Bullard, acting under color of state law, violated Dr. Deariso's right to be free from race discrimination in employment, because he, as DCSS Assistant Superintendent, was in a position of authority to take responsive action to stop the violations of Dr. Deariso's rights as described herein, and he knew about the violations of Dr. Deariso's rights, yet he failed to act, thereby acquiescing in the discriminatory conduct and causing the discrimination against Dr. Deariso to persist and worsen. Defendant Bullard's failure to act in the

face of known violations of Dr. Deariso's rights amounted to deliberate indifference.

106.   Defendant Bullard, acting under color of state law, violated Dr. Deariso's right to be free from race discrimination in employment by subjecting him to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included subjecting Dr. Deariso to discriminatory and harassing investigations; and subjecting Dr. Deariso to overt hostility because of his race.

107.   Defendant Bullard, acting under color of state law, violated Dr. Deariso's constitutional right to be free from race discrimination in employment by terminating his employment and refusing to rehire him because of race.

108.   Defendant Bullard, acting in his individual capacity, undertook his conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, or additionally, and in the alternative, undertook his conduct recklessly with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against Defendant Bullard.

109.   Defendant Bullard's conduct described above has directly and proximately caused, and continues to cause, Dr. Deariso to suffer loss of income and other financial benefits, a loss of future professional opportunities and future

income, pain and suffering, humiliation, personal embarrassment, and damage to his professional reputation.

110.   Defendant Inyang, acting under the color of state law, violated Dr. Deariso's right to be free from race discrimination in employment by directly participating in Defendant DCSS's discriminatory actions to subject Dr. Deariso to disparate treatment in a manner that adversely affected the terms and conditions of his employment and rehire.

111.   Defendant Inyang, acting under color of state law, violated Dr. Deariso's right to be free from race discrimination in employment, because he, as DCSS Associate Superintendent for Academic Services, was in a position of authority to take responsive action to stop the violations of Dr. Deariso's rights as described herein, and he knew about the violations of Dr. Deariso's rights, yet he failed to act, thereby acquiescing to the discriminatory conduct and causing the discrimination against Dr. Deariso to persist and worsen. Defendant Inyang's failure to act in the face of known violations of Dr. Deariso's constitutional rights amounted to deliberate indifference.

112.   Defendant Inyang, acting under color of state law, violated Dr. Deariso's right to be free from race discrimination in employment by subjecting him to severe and pervasive harassment based on race and creating a hostile work environment. This harassment included subjecting Dr. Deariso to

discriminatory and harassing investigations; and subjecting Dr. Deariso to overt hostility.

113.   Defendant Inyang, acting under color of state law, violated Dr. Deariso's right to be free from race discrimination in employment by terminating his employment because of race and refusing to rehire him because of race.

114.   Defendant Inyang, acting in his individual capacity, undertook his conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, or additionally, and in the alternative, undertook his conduct recklessly with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against Defendant Inyang.

115.   Defendant Inyang's conduct described above has directly and proximately caused, and continues to cause, Dr. Deariso to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to his professional reputation.

116.   The Individual Defendants' interference with Dr. Deariso's efforts to promote equity for students and staff in his school district and with his ability to execute his job duties violated Dr. Deariso's rights under § 1981 because of his statutory right to equal benefits of laws and proceedings as well as his contract-

based employment right to be free from race discrimination. The Individual Defendants' final decision-making role in Dr. Deariso's termination gives rise to the Individual Defendants' liability under § 1981.

117. As a direct and proximate result of the Individual Defendants' violations of 42 U.S.C. § 1981, Plaintiff has suffered damages including lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

118. Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the below prayer for relief for the Individual Defendants' violations of his rights under 42 U.S.C. § 1981, which rights are protected from infringement by the Civil Rights Act of 1871, 42 U.S.C. § 1983.

## REQUESTED RELIEF

WHEREFORE, Dr. Deariso demands a TRIAL BY JURY and for the following relief:

A.   Adjudicate and declare that Defendants have violated Plaintiff's federally protected rights as pled above;

B.   Permanently enjoin Defendants from committing similar violations in the future;

C.     Award Dr. Deariso damages in an amount to be proved at trial for economic losses, damage to professional reputation, and pain and suffering that he has experienced as a result of Defendants' unlawful conduct;

D.     Award Plaintiff pre-judgment and post-judgment interest as required by law;

E.     Award Plaintiff compensatory damages for emotional pain and suffering as determined by a jury;

F.     Award Plaintiff compensatory and punitive damages against the individually named Defendants Dyer, Bullard, and Inyang pursuant to 42 U.S.C. § 1981, the Equal Protection Clause of the United States Constitution, 42 U.S.C. § 1983, and all other applicable federal and state laws in an amount to be determined by the trier of fact;

G.     Award Dr. Deariso attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

H.     Order Defendant Dougherty County School System to reinstate Plaintiff with all compensation and benefits made retroactive to his last day of employment or, in lieu of same, award front pay; and

I.     Grant such additional relief as may be proper and just.

Respectfully submitted this 17th day of November, 2020.

/s/ Edward D. Buckley
Edward D. Buckley

GA Bar No. 092750
edbuckley@buckleybeal.com
**BUCKLEY BEAL, LLP**
600 Peachtree Street NE, Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101